UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

RONALD Q. TERRY,

        Defendant.

Case No. 05-cr-146-pp

---

**ORDER DENYING DEFENDANT'S MOTION FOR A REDUCED SENTENCE UNDER THE FIRST STEP ACT OF 2018 (DKT. NO. 834)**

---

I.    Procedural and Factual Background

On May 19, 2005, the defendant was arrested on a federal complaint. Dkt. No. 15. June 7, 2005, the grand jury indicted the defendant and six others in a seven-count indictment. Dkt. No. 37. Count One charged all defendants with conspiring to possess with intent to distribute and to distribute five kilograms or more of cocaine and fifty grams or more of crack. Id. at 1-3. Count Six charged the defendant and Mark Cubie with a substantive count of possession with intent to distribute marijuana, five grams or more of crack and 500 grams or more of powder cocaine. Id. at 8.

At the June 9, 2005 arraignment and plea, the government advised that Count One carried a mandatory minimum penalty of ten years and Count Six carried a mandatory minimum penalty of five years. Dkt. No. 45 at 2. The defendant was detained. Dkt. No. 57. On July 19, 2005, the grand jury

1

returned a superseding indictment, adding a defendant; the charges against the defendant did not change. Dkt. No. 81.

After pretrial litigation, the grand jury returned a second superseding indictment on August 22, 2006. Dkt. No. 259. The indictment added a defendant and dropped one, but the charges against the defendant remained the same. Id. A third superseding indictment, returned after extensive litigation and trial preparation, added a new charge—Count Two alleged that on September 19, 2002, the defendant, Orlandes Nicksion and Mark Cubie knowingly discharged a gun during and in relation to the drug conspiracy. Dkt. No. 419 at 4. It also revised the start date of the conspiracy, indicating that the conspiracy began "sometime in 2002," id. at 1, rather than in 2004 as the prior iterations of the indictment had alleged.

On October 29, 2007—almost two and a half years after the defendant was arrested, and the date scheduled for the jury trial—the parties filed a plea agreement. Dkt. No. 466. The defendant agreed to plead guilty to the conspiracy charge. Id. at 2-3. This subjected him to a ten-year mandatory minimum sentence. Id. at 3. That same day, the defendant appeared before district judge Charles N. Clevert, Jr. and entered his guilty plea. Dkt. No. 474.

Co-defendants Orlandes Nicksion and Mark Cubie also filed plea agreements on October 29, 2007. Dkt. Nos. 467, 469. Nicksion agreed to plead guilty to the conspiracy count. Dkt. No. 467. Cubie pled guilty to the conspiracy count and one count of carrying a firearm during and in relation to a drug trafficking offense that occurred on February 2, 2005. Dkt. No. 469.

2

Case 2:05-cr-00146-PP   Filed 06/22/20   Page 2 of 13   Document 842

The defendant's presentence investigation report recounted that the defendant had supplied cocaine to Ronald Banks. Dkt. No. 839-1 at 40. Mr. Banks indicated that the defendant received the cocaine in kilogram quantities from his cousin "Lando"—presumably Orlandes Nicksion. Id. Mr. Banks also recounted that he cooked powder cocaine into crack on a regular basis for the defendant. Id. Wire taps captured conversations between the defendant and other members of the conspiracy, discussing drug transactions. Id. at 50-51, 53-67. Several individuals gave post-arrest statements indicating that the defendant was a distributer of drugs for the Cubie/Nicksion drug organization. Id. at 70, 76-81. The government described Cubie and Nicksion as the leaders of the conspiracy, and the defendant and Delano Hill as their distributors. Id. at 82. The government argued that the defendant was responsible for fifty to 150 kilograms of cocaine. Id. at 82. The defendant disagreed, arguing that he was responsible for fifteen to fifty kilograms of cocaine. Id. at 84.

The defendant's criminal history dated back to age 17, and included felony convictions for false imprisonment, fleeing and carrying a concealed weapon and obstructing an officer, as well as misdemeanor drug and bail-jumping convictions. Id. at 86-90. The defendant had other charge pending at the time the PSR was prepared. Id. at 91.

If these were the only facts reflected in the PSR, it appears that the defendant's base Guideline offense level would have been 36 if the court had adopted the government's drug amounts (under §2D1.1(c)(2) of the 2007 Guidelines Manual) and 34 if the court had adopted the defendant's drug

3

amounts (under §2D1.1(c)(3) of the 2007 Guidelines Manual). Subtracting three levels for acceptance of responsibility under §§3E1.1(a) and (b) would have resulted in an adjusted offense level of 33 (government's calculations) or 31 (defendant's calculations). Given the defendant's criminal history category of IV, he would have faced a sentencing range of 188-235 months (government's calculations) or 151-188 months (defendant's calculations).

But the PSR contained additional facts about an event that occurred on September 19, 2002. On that date, a witness heard a gunshot, looked outside and saw an individual fall to the ground; two men were with him, but got into a gray or silver two-door Monte Carlo with 20" tires and six-point star mag rims and drive off. Id. at 64-65. When firefighters arrived, they found Earl Benion in the street with a single gunshot wound to his left hip area; a firefighter heard Benion say that "Von" had shot him and that "Orlando" was with Von. Id. at 65. Benion told the responding paramedic that Orlando was driving the car and that Von had shot him. Id. He said something similar to the officer who rode with him in the ambulance. Id. Benion was taken to the hospital, but died the following morning. Id. at 65-66. The medical examiner determined that he had bled to death. Id. at 66. The police investigation eventually revealed that the defendant had shot Benion and that Orlandes Nicksion had been the second individual at the scene. Id. at 66-69.

As a result of this event, the presentence writer recommended that the court use a base offense level of 38 under §2D1.1(d), id. at 84, which stated that "[i]f a victim was killed under circumstances that would constitute murder

4

under 18 U.S.C. §1111 had such killing taken place within the territorial or maritime jurisdiction of the United States," the court should apply either §2A1.1 (First Degree Murder) or §2A1.2 (Second Degree Murder) . The presentence writer noted that evidence indicated that the defendant shot Benion while trying to collect a drug debt Benion owed him and Nicksion. Id. The presentence writer opined that, because the defendant appeared to have planned to use the gun to intimidate Benion, the shooting was more appropriately characterized as second-degree murder, therefore recommending the base offense level of 38 under §2A1.2, rather than the base offense level of 43 under §2A1.1. Id.

The defendant objected, asserting that the shooting constituted voluntary manslaughter as defined under 18 U.S.C. §1112(a) (defined as the unlawful killing of a human being without malice upon a sudden quarrel or heat of passion), and therefore that the court should use the drug amount guidelines in §2D1.1 to calculate the defendant's offense level. Id. at 2.

Judge Clevert had scheduled the defendant, Nicksion and Cubie for a consolidated sentencing hearing on August 22, 2008. Dkt. No. 508. But when the parties appeared that day, Nicksion and Cubie objected to the presentence writer's recommendation that they receive guidelines enhancements for Benion's death. Dkt. No. 556 at 2. The defendant stood silent on the issue of the death of Mr. Benion but asked to proceed to sentencing that day as scheduled. Id. Judge Clevert adjourned the sentencing hearings for Nicksion and Cubie, id. at 2, but conducted the defendant's sentencing hearing as

5

scheduled and overruled his objection to the use of the second-degree murder guideline to set his base offense level, dkt. no. 839-1 at 1. Subtracting three levels for acceptance of responsibility from the base offense level of 38, Judge Clevert concluded that the defendant's adjusted offense level was 35, which in criminal history category IV yielded a sentencing range of 235 to 293 months. Id. Judge Clevert sentenced the defendant to serve 260 months in custody followed by five years of supervised release. Dkt. Nos. 557, 558.

Judge Clevert sentenced co-defendant Cubie on October 30, 2008. Dkt. No. 572. He sentenced Cubie to serve 235 months on the drug conspiracy charge and sixty months consecutive on the gun charge, for a total sentence of 295 months. Id. at 1, Dkt. No. 579. Judge Clevert specifically stated that he had not enhanced Cubie's sentence based on Benion's death and asked the presentence writer to modify the PSR to say that. Dkt. No. 572 at 2. Judge Clevert stated that the government was not asking the court to enhance Cubie's sentence based on Benion's death. Dkt. No. 657 at 23.

In November 2008, Orlandes Nicksion moved to withdraw his guilty plea. Dkt. No. 578. The court granted that motion. Dkt. No. 586. Nicksion went to trial in June 2009. Dkt. Nos. 605-606. The jury found him guilty on the conspiracy count and on the charge of knowingly discharging a firearm during and in relation to a drug trafficking offense—the shooting of Earl Benion. Dkt. No. 611. In October 2009, Judge Clevert sentenced Nicksion to serve 480 months in custody. Dkt. No. 627. In 2016, the court denied Nicksion's motion

6

for a sentence reduction under Amendment 782, because his guideline range was calculated under §2A1.2, not §2D1.1. Dkt. No. 803.

The defendant appealed his sentence, dkt. no. 560, and the Seventh Circuit affirmed, dkt. no. 612. When Judge Clevert retired in March 2015, the case was reassigned to this court.

On April 3, 2020, the court granted co-defendant Cubie's motion for a reduced sentence under the First Step Act. Dkt. No. 831.

II. <u>Analysis</u>

The conspiracy to which the defendant pled guilty[1] involved five kilograms or more of powder cocaine and fifty grams or more of crack; at the time of his sentencing, 21 U.S.C. §841(b)(1)(A) mandated a ten-year mandatory minimum sentence for those amounts. Section 404 of the First Step Act of 2018 made retroactive to offenses committed prior to 2010 the Fair Sentencing Act of 2010, which reduced the mandatory minimum for crack so that

---

[1] The defendant asserts that the conspiracy to which he pled guilty covered the period from 2004 through May 16, 2005, citing to the plea agreement. Dkt. No. 834 at 1, citing Dkt. No. 466 at 2. The plea agreement states in paragraph 2 that the defendant had been charged in "three counts of a nine-count *third* superseding indictment . . . ." Dkt. No. 466 at ¶2. Count One of the third superseding indictment alleged that "[b]eginning in sometime in *2002* and continuing through May 15, 2005," six defendants—Cubie, Nicksion, the defendant, Delano Hill, Jose Lopez and Donald Buchanan—engaged in a conspiracy. Dkt. No. 419 at 1. But the plea agreement quotes Count One of the *second* superseding indictment, which alleged that "[b]eginning in sometime in 2004," eight defendants—Cubie, Nicksion, the defendant, Anthony Burke, Delano hill, Sylvester Pigram, Jose Lopez, and Donald Buchanan—engaged in a conspiracy. Dkt. No. 466 at 2 (plea agreement). <u>See</u> Dkt. No. 259 at 1 (second superseding indictment). The drafter of the plea agreement appears to have quoted an indictment that had been, for lack of a more accurate term, superseded by a subsequent indictment.

7

possession of fifty grams or more would result in a five-year mandatory minimum and a maximum of forty years.

The defendant argues that he meets the criteria for a reduced sentence under the First Step Act, because his offense was committed before August 3, 2010 (the effective date of the Fair Sentencing Act), he hasn't been sentenced or resentenced under that statute and he hasn't previously filed a request for a reduction under the First Step Act. Dkt. No. 834 at 3. Those facts are true. And the statute the defendant was convicted of violating—conspiracy to violate 21 U.S.C. §841(a)(1)—is a "covered offense." See United States v. Turner, Case No. 05-cr-11 at Dkt. No. 272, page 6 (E.D. Wis. Oct. 31, 2019).

But First Step Act reductions are discretionary. The court cannot conclude that this is an appropriate case for exercising that discretion, even if the defendant is eligible for the reduction (and the court makes no finding on that question). Judge Clevert did not calculate the defendant's sentencing guidelines or his sentencing range based on the amount of crack attributed to him. Judge Clevert calculated the defendant's guidelines and his sentence based on the fact that he found that during the drug conspiracy to which the defendant pled guilty—regardless of the amount or type of controlled substances it involved—a victim (Earl Benion) was killed under circumstances that would constitute second-degree murder. The defendant is not a member of "that forgotten group of offenders serving sentences under guidelines deemed now, and as far back as 2010, to be overly harsh" because they were based solely on the fact that his offenses involved crack cocaine and not powder. Id.

at 25 (quoting United States v. Mack, No. 00-323-02 (KSH), 2019 WL 3297495, at *13 (D.N.J. July 23, 2019)). Had the defendant been convicted of conspiring to distribute only powder cocaine, and not crack, the result would have been the same—Judge Clevert would have calculated his sentence under §§2D1.1(d) and 2A1.2, and his sentencing range would have been 235 to 293 months.

The defendant argues that he has been in prison for a very long time (over fifteen years) despite never having been charged with or convicted of a homicide. Dkt. No. 834 at 7-9. While the defendant admits that he shot Benion one time in the hip and that Benion died the next day, he argues that he never was able to confront the claims that he acted with malice aforethought, and says that he was essential "found guilty of second-degree murder on paper" and sentenced accordingly. Id. at 8. The defendant explains that he is not trying to disturb Judge Clevert's ruling in that regard; he implies that he has suffered enough. Id.

Although the defendant asserts that he is not challenging Judge Clevert's finding, he is. The defendant now suggests that this court should reduce his sentence because he did not have the opportunity to challenge the allegation that he acted with malice aforethought before a jury. But he had the opportunity to make that argument before Judge Clevert. He did not. In fact, at the joint portion of the August 22, 2008 sentencing hearing, the defendant withdrew his objection to the use of §2A1.2 because the government planned to introduce evidence on the issue. Dkt. No. 570 at 20. The defendant could have argued to the Seventh Circuit that Judge Clevert erred in finding that his

9

shooting of Benion amounted to second-degree murder; he admits he did not. The defendant could have filed a §2255 petition collaterally attacking his sentence on that ground. He did not. For this court to reduce the defendant's sentence because the conspiracy to which he pled involved crack when his sentence was not driven by that fact would subvert the purpose and intent of the First Step Act.

The defendant argues that his health has deteriorated while he has been in custody (specifically his vision). Dkt. No. 834 at 4. The court is sorry to hear of the deterioration of the defendant's vision, and to hear that he believes it is because he did not receive the appropriate eye surgery until six years after sentencing. The fact that someone has been convicted of a crime and sentenced to prison should not mean that he is denied appropriate health care. But there are processes for inmates to follow—they can file health services requests, file inmate complaints if they are not seen or treated, even file civil rights suits under 42 U.S.C. §1983 and see injunctive relief. The defendant's request now, many years later, to have his sentence reduced because he did not timely receive the surgery he needed is not, in the court's view, a reason for the court to exercise its discretion under these circumstances.

The defendant also says that he has used his time in prison to participate in and complete programming. Id. at 5. This is good to hear; it will serve the defendant well while he is in custody and upon his release. But again, under the circumstances, it is not a basis for the court to exercise its discretion.

As to his plans for release, the defendant says that he would live with his father, doing office work at Terry Transport, his father's company. Id. The defendant's father says the defendant's grandmother would like to see him again, and the defendant says he has grandchildren he has not met. Id. He says that he will have support in the community when released. Id. It is not just the defendant who is punished when he is incarcerated; his family suffers, too. Most defendants, however, face similar family suffering when they are incarcerated. The fact that the defendant could work at his father's office is not a reason for the court to exercise its discretion.

The defendant argues that due to COVID-19, he has been stuck for over three months at the Federal Transfer Center in Oklahoma City (rather than being transferred to Terre Haute as planned), a facility that has no programming available and has fifty COVID-positive inmates. Dkt. No. 834 at 5-6. The defendant also states that he has rheumatoid arthritis, which at least one organization has speculated may put a person at higher risk for severe illness if infected with COVID-19. Dkt. No. 834 at 6.

The defendant did not style his motion as a motion for compassionate release under 18 U.S.C. §3582(c)(2). But construing the motion in that light, the court could not grant it. The defendant has not demonstrated that he first sought compassionate release from the warden of the Transfer Facility, or that the warden failed to act within thirty days of the request. The defendant has not presented "extraordinary and compelling reasons" for a compassionate release reduction. The defendant is forty-five years old. Dkt. No. 839-1 at 32.

11

He is not in the "vulnerable" age group (people sixty-five and over) identified by the CDC as people at higher risk for severe illness if they are infected. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. While rheumatoid arthritis is an autoimmune and inflammatory disease, https://www.cdc.gov/arthritis/basics/rheumatoid-arthritis.html, and while the CDC says that people with weakened immune systems are at higher risk of getting severely ill if infected, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html, someone with RA does not necessarily have a weakened immune system.

The court does not mean to downplay the defendant's concerns about COVID-19. The court has received numerous motions from inmates at facilities with large outbreaks of COVID. The court is aware that inmates cannot socially distance, cannot wash their hands as often as they would like, cannot avoid contact with others, sometimes have no access to masks or hand sanitizer. Inmates are afraid—for themselves and their families, whom they can't help while in custody. But the existence of the virus does not, standing alone, demonstrate "extraordinary and compelling circumstances" justifying compassionate release.

Finally, the defendant states in his motion that this court "has ruled that similarly situated defendants meet the criteria for a reduce sentence under the First Step Act, including co-defendant Mark Cubie in this case." Dkt. No. 834 at 2. He is correct that the defendant granted defendant Cubie's First Step

12

motion. It cannot agree, however, that the defendant is "similarly situated" to co-defendant Cubie. Cubie was one of the two leaders of the drug organization for which the defendant was a distributor, Orlandes Nicksion being the other. But the government presented no evidence in this case that Cubie was involved in the shooting of Earl Benion. There was some intimation in Cubie's case that Cubie made a threat to a third party which set off a chain of events that eventually led to the shooting. But there is no dispute that the defendant pulled the trigger and shot Mr. Benion. The court already has explained that it was that shooting, not the amount of drugs attributed to the defendant, which drove the defendant's sentence. The same was not true of co-defendant Cubie. His sentence was driven by the amount of drugs attributed to him, and the court reduced his sentence based on that fact.

III. Conclusion

The court **DENIES** the defendant's motion for a reduced sentence under the First Step Act of 2018. Dkt. No. 834.

Dated in Milwaukee, Wisconsin this 22nd day of June, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

13

Case 2:05-cr-00146-PP    Filed 06/22/20    Page 13 of 13    Document 842